UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMPLIANCE SERVICES OF AMERICA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HOUSER HOLDINGS, LLC, et al.,<br><br>Defendants. | Case No.  13-cv-01269-JST<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: ECF No. 10 |

Before the Court is Defendants' Motion to Dismiss, ECF No. 10.  For the reasons discussed below, the Court will deny the motion as to Houser Holdings, LLC, and grant it as to Defendant Teresa Thurman.

**I.    FACTS**

**A.    Factual Allegations**

The Court accepts the following allegations as true for the purpose of resolving this motion to dismiss.  See Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).

This action arises out of a dispute between a former husband and wife and an alleged loan of approximately $400,000.  Compl., ECF No. 1 ¶ 11; Thurman Decl., ECF No. 10-3, ¶ 5.

Plaintiff Compliance Services of America, LLC, is a company organized and existing under the laws of Nevada.  Compl. ¶ 1.  Michael Rode is its managing member.  Id.  Defendant Teresa Thurman, Rode's ex-wife, is a California citizen residing in Rohnert Park, California.  Compl. ¶ 3; Thurman Decl. ¶ 5.

The Complaint names "Houser Holdings, LLC," as Defendant, and describes it as a California limited liability company organized and existing under the laws of California with its principal place of business at 29801 North Highway 101, Willits, California.  Compl. ¶¶ 2, 8.  The Complaint also alleges that Thurman is the sole or majority owner of the membership interests in

Houser Holdings, LLC. Id. ¶ 3. Finally, the Complaint alleges that Houser Holdings, LLC owns the Willits RV (recreational vehicle) Park at 29801 North Highway 101, Willits CA, 95490 (RV Park). Id. ¶ 8.

In August 2008, Thurman asked Rode for a loan of $200,000 to fund improvements and upgrades to the RV Park.[1] Id. ¶ 9A. Thurman told Rode that, without the upgrades, the RV Park would face substantial government fines in the future and would fail as a business. With the upgrades, the RV Park would continue to operate, become profitable, and begin generating substantial net operating income. Id. ¶¶ 9B–D. Rode told Thurman that Compliance Services would provide the $200,000 if that amount, plus simple interest, was repaid as soon as possible using any net operating income from the RV Park, or by no later than August 31, 2012. Id. ¶ 9E. On behalf of herself and Houser Holdings, LLC, Thurman agreed to Rode's proposal. Id. ¶ 9F. A year later, in August 2009, on behalf of Compliance Services, Rode agreed to increase the loan amount to $400,000. Id. ¶ 10.

Pursuant to the oral agreement, Compliance Services made a series of payments to, or on behalf of, Thurman and Houser Holdings, LLC, from August 2008 to September 2009, totaling $398,998.40. Id. ¶ 11. Defendants used the money to make improvements to the RV Park. Id. However, after the improvements were made, Defendants claimed the RV Park had no operating income available from which it could repay Compliance Services. Id. ¶ 12. In August 2012, Rode demanded repayment from Defendants. Id. ¶ 13. In response, Thurman denied the existence of the agreement, denied that Defendants owed any money to Rode, and stated that Defendants would not repay the loan. Id. ¶ 14.

**B.    Requests for Judicial Notice**

Although the Court's review on a motion to dismiss is generally limited to the allegations in the complaint, Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), the Court may properly take judicial notice of material attached to the complaint and of matters in the public record pursuant to Federal Rule of Evidence 201(b). See, e.g., Castillo-Villagra v. INS, 972 F.2d

---

[1] The following factual summary is taken from the allegations in the Complaint.

1017, 1026 (9th Cir. 1992).  The "incorporation by reference" doctrine applies when a "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."  <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005).  A court "shall take judicial notice if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).  <u>See</u> <u>Sato v. Wachovia Mortg</u>., FSB, 11-cv-00810-EJD, 2011 WL 2784567, at *2 (N.D. Cal. July 13, 2011).

        The Court GRANTS Defendants' unopposed request for judicial notice of the Nevada Secretary of State Records for Houser Holdings, LLC, the California Secretary of State Record Search for "Houser Holdings, LLC" and "Compliance Services of America, LLC," and the Mendocino County Recorder Records.  Def.'s RJN, ECF No. 10, Exs. A–C.  The Court also GRANTS Plaintiff's unopposed request for judicial notice of the summons and proof of service in this action, the Profile Report issued by Chicago Titled Company, and the Mendocino County Recorder Records of the Deed of Trust for the 29801 North Highway 101, Willits, CA 95490 property.  Pl.'s RJN, ECF No. 12, Exs. A–E.

        **C.**    **Facts Pertaining to Service and Diversity Jurisdiction**

        Although the Summons and Complaint identify Defendant Houser Holdings, LLC as a California company, and Thurman as its managing member and representative agent, the California "Houser Holdings" entity is actually called "Houser Holdings CA, LLC" ("Houser-CA").  Pl.'s RJN, Ex. B p. 4.  It is Houser-CA that is registered at the Willits, California address.  Def.'s RJN, Ex. B at 1.  Thurman is Houser-CA's registered agent in California, <u>id.</u>, and its managing member, Thurman Decl., ¶ 8.  Prior to February 2007, Houser-CA's name was "Houser Holdings, LLC."  Def.'s RJN, Ex. B p. 4.

        Separately, Thurman is also the managing member of "Houser Holdings, LLC" ("Houser-NV"), a Nevada limited liability company.  Thurman Decl. ¶¶ 6, 7.  The registered agent for Houser-NV is "Nevada Corporate Headquarters, Inc.," located at 101 Convention Center Dr., Suite 700, Las Vegas, NV 89109.  Def.'s RJN, Ex. A at 1.  According to Thurman, other than her role as an investor in each venture, Houser-NV and Houser-CA do not have any common interests.

Thurman Decl. ¶ 10.

The 2005 grant deed to the RV Park property indicates that title to the property is currently held by "Houser Holdings, LLC, a California Limited Liability Company." Pl.'s RJN, Ex. C p. 2; see also Opp., ECF No. 12 p. 7. In June 2007, the then-recently renamed Houser-CA also entered into a deed of trust related to the RV Park as "Houser Holdings, LLC, A California Limited Liability Company," signed by Thurman on behalf of "Houser Holdings, LLC." Pl.'s RJN, Ex. D pp. 1, 9, ECF No. 12-1; see also Opp. p. 7. Similarly, Houser-CA entered into another deed of trust related to the RV Park property in April 2010 as "Houser Holdings, LLC," signed by Thurman on behalf of "Houser Holdings, LLC." Pl.'s RJN, Ex. E pp. 1, 9; see also Opp. p. 7.

The proof of service indicates that Plaintiff served "Houser Holdings, LLC, a California Limited Liability Company." ECF No. 9. It lists as the person served: "Teresa Thurman, registered agent authorized to accept service." Id. "Houser Holdings, LLC" was served by leaving copies with or in the presence of Jane Doe, a female manager at the RV Park property, who is identified as a person in charge of the office or usual place of business of the person served. Id. Additionally, proof of service by mail was sent to "Houser Holding, LLC, a California Limited Liability Company 29801 N. Highway 101, Willits, California 95490." Id., Ex. B at 2. In other words, though the summons and proof of service accidentally identified Houser-NV as the entity sued and served in this case, Plaintiff actually served Houser-CA, as it intended.

## II.    LEGAL STANDARD

On a motion to dismiss, courts accept the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To be entitled to the presumption of truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. den'd, --- U.S. ----, 132 S.Ct. 2101 (2012).

In addition, to survive a motion to dismiss, a plaintiff must plead "enough facts to state a

claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In the Ninth Circuit, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." Starr, 652 F.3d at 1216 (original emphasis).

In addition, fraud claims are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The allegations must be specific enough to give a defendant notice of the particular misconduct alleged to constitute the fraud such that the defendant may defend against the charge. Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). In general, allegations sounding in fraud must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007). However, "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Finally, federal district courts have original jurisdiction over all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C.A. § 1332(a). The party asserting diversity jurisdiction bears the burden of proving diversity of citizenship. Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for

1   Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  In resolving a facial
2   attack, courts assume that the allegations are true, and draw all reasonable inferences in the
3   plaintiff's favor.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted).  "In
4   resolving a factual attack on jurisdiction, the district court may review evidence beyond the
5   complaint without converting the motion to dismiss into a motion for summary judgment.  The
6   court need not presume the truthfulness of the plaintiff's allegations.  Once the moving party has
7   converted the motion to dismiss into a factual motion by presenting affidavits or other evidence
8   properly brought before the court, the party opposing the motion must furnish affidavits or other
9   evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Safe Air, 373
10  F.3d at 1039 (citations omitted).

**III.   ANALYSIS**

Defendants move to dismiss Plaintiff's Complaint for lack of diversity jurisdiction, and for failure to state a claim upon which relief may be granted.

**A.   Diversity Jurisdiction**

Defendants move to dismiss on the grounds that the Court lacks diversity jurisdiction because Plaintiff, a Nevada company, accidentally named Houser-NV in the Complaint rather than Houser-CA.  Indeed, it is Houser-NV, not Houser-CA, who moved to dismiss this action.  See Mot., ECF No. 10 ("Teresa Thurman and *Houser Holdings, LLC* and [sic] will move and do move for an order dismissing" the Complaint) (emphasis added).  Houser-CA has not appeared.

Integral to Defendants' motion is a determination as to which corporate entity Plaintiff sued – House-CA, as it intended, or Houser-NV.  That determination hinges on whether Plaintiff adequately served either corporation, and if so, which.

A federal court does not have jurisdiction over a defendant unless the defendant has been served in accordance with Rule 4 of the Federal Rules of Civil Procedure.  Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir. 1982).  However, Rule 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984) (citations omitted).  Hence, "[e]ven if the summons fails to name all of the defendants, dismissal is generally

not justified absent a showing of prejudice . . . [f]or this reason, a defendant's answer and appearance in an action should be enough to prevent any technical error in form from invalidating the process." Id. (citations and internal quotations omitted).

"[T]he purpose of process is to bring parties into court." Barsten v. Dep't of Interior, 896 F.2d 422, 423 (9th Cir. 1990) (citing United States v. A.H. Fischer Lumber Co., 162 F.2d 872, 873 (4th Cir. 1947)). If the parties are named "in such terms that every intelligent person understands who is meant . . . it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else." Id. (sustaining complaint that erroneously named Department of Interior rather than Secretary of Interior because "[a] suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice"). Moreover, if an improper defendant is named, courts may consider the complaint to have named the proper defendant "if the allegations made in the body of the complaint make it plain that the party is intended as a defendant." Id. at 423–24 (quoting Rice v. Hamilton Air Force Base Commissary, 720 F.2d 1082, 1085 (9th Cir. 1983)).

Here, the Court finds that Plaintiff sued, and adequately served, Houser-CA. The summons named the registered agent for Houser-CA, and Plaintiff effected service of Houser-CA at its California registered agent's address. Also, Houser-CA has used the Houser-NV name on records relating to the RV park for which Plaintiff allegedly loaned Defendants money as recently as 2010. Opp. 7-8. No party – including Houser-CA – could have been confused as to Plaintiff's intent to sue Houser-CA, not Houser-NV. The Court considers Plaintiff's mistaken use of "Houser Holdings, LLC" in the summons and complaint as a technical error plain to anyone who reads the Complaint, which states that "Houser Holdings, LLC" is "a California corporation."

Because Plaintiff sued and served Houser-CA and not Houser-NV, Houser-NV is not a party to this case and its motion is not properly before the Court. Its motion to dismiss is DENIED.

**B.     Service on Defendant Thurman**

Thurman moves to dismiss on the grounds of inadequate service. Defendant argues that Plaintiff did not personally serve Thurman because she does not live at the address recited in the

7

proof of service. Plaintiff argues that Thurman received adequate service because she was served by substitute service at a location that is known to be her place of business.

Rule 4 of the Federal Rules of Civil Procedure provides for service of individuals residing within a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). In California, where Thurman resides, "[i]f a copy of the summons and of the complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and of the complaint at such person's dwelling house, usual place of abode, usual place of business . . . in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business." Cal. Civ. Proc. Code § 415.20 (West).

Typically, substitute service is only acceptable after a good faith effort at personal service has first been made and the burden is on the plaintiff to show that the summons and complaint cannot with reasonable diligence be personally delivered to the individual defendant. Am. Exp. Centurion Bank v. Zara, 199 Cal. App. 4th 383, 389 (Cal. Ct. App. 2011) (internal citations omitted). "Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as reasonable diligence." Id. (internal citations omitted). Generally, to be acceptable, substituted service must be "reasonably calculated to give an interested party actual notice of the proceedings and an opportunity to be heard . . . [such that] the traditional notions of fair play and substantial justice implicit in due process are satisfied." Stafford v. Mach, 64 Cal. App. 4th 1174, 1182-83, (Cal. Ct. App. 1998) (internal citations omitted).

Here, there is no evidence that Plaintiff made any effort to personally serve Thurman. The Court therefore finds that Plaintiff failed adequately to serve Defendant Thurman, as without showing reasonable diligence, Plaintiff was not entitled to effect service through substitute service. Defendant Thurman's Motion to Dismiss on those grounds is therefore GRANTED.

### C. Breach of Contract

Plaintiff alleges that Rode's agreement with Thurman to lend money from Compliance Services to Houser-CA for upgrades to the RV Park is a valid oral contract, and that Defendants

1 breached it when they failed to repay the loan. Compl. ¶ 1.

2 Under California law, the elements of a cause of action for breach of contract are: (1) the existence of the contract, (2) performance by or excuse for nonperformance by the plaintiff, (3) breach by the defendant, and (4) damages. Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (Cal. 2011). Here, Plaintiff alleges: that Compliance Services and Defendants entered into a valid oral contract in August 2008 when Thurman asked for a $200,000 loan to make upgrades to the RV Park; that Plaintiff offered the loan to Defendants in exchange for Defendants' agreement to repay the loan with simple interest of six percent "as soon as possible . . . but in no event later than August 31, 2012;" that on behalf of herself and Houser Holdings, LLC, Thurman agreed, Compl. ¶¶ 9–16; that in August 2009, Plaintiff and Defendants agreed to increase the amount of the loan to $400,000, id. ¶¶ 11, 17; that Plaintiff performed its obligations under the contract by making a series of payments to, or on behalf of, Defendants, totaling $398,998.40, id. ¶ 11; and, finally, that Defendants breached the oral contract by failing to fulfill the agreement to pay the loan in full by August 31, 2012, id. ¶ 14.

Defendants move to dismiss Plaintiff's contract claim because (1) the oral contract is unenforceable because it was not capable of being performed within one year; (2) the oral contract is unenforceable because Plaintiff agreed to answer for another's debts; (3) to the extent that Thurman was a party to the contract, she was only a guarantor of the benefit of the loans to the Houser-CA; and, (4) that the loan agreement must have been made in writing because the contract recites a loan of more than $100,000, and Rode was acting as a person engaged in the business of lending or arranging for the lending of money or extending credit. Each of those arguments fails.[2]

First, Plaintiff alleges that Defendants agreed to repay the loan "as soon as possible." Compl. ¶ 9F. Therefore, the contract was capable of being performed within one year. E.g.,

---

[2] In reply, Defendants argue for the first time that under section 17101 of the California Corporations Code, Thurman cannot be personally liable for a company debt in the absence of a written guarantee. This Court "need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir.2007); see also Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir.1999) ("[A]n argument raised for the first time in a reply brief, . . . is not an argument that we may consider here.").

1  Steward v. Mercy Hosp., 188 Cal. App. 3d 1290, 1296 (1987) (an oral employment contract
2  without a termination date is nonetheless enforceable because it can be performed in less than a
3  year, even if the job actually lasts longer).  Second, Plaintiff alleges the loan was made for
4  Defendants to make future upgrades to the RV Park.  Compl. ¶ 9A.  There is no allegation that the
5  loan was made to answer for any of Defendants' debts.  Third, Plaintiff alleges that Thurman
6  agreed, on behalf of both herself and Houser Holdings, to repay the loan.  Contrary to Defendants'
7  argument, Plaintiff has not alleged that the extent of Thurman's participation in the contract was
8  limited to acting as a guarantor of a benefit for another party.  Instead, Plaintiff has alleged that
9  Thurman promised both personally, and on behalf of Houser Holdings, to repay the loan.  Finally,
10 no allegation supports the claim that Plaintiff is engaged in the business of lending or arranging
11 for the lending of money, and – even assuming it were proper to look outside the boundaries of a
12 complaint on this motion to dismiss – Defendants do not present any evidence suggesting as
13 much.  Plaintiff alleges that Rode loaned money only to Defendants, and, in particular, to Rode's
14 ex-wife, not that Plaintiff is in the business of lending money.

   Defendants' motion to dismiss Plaintiff's breach of contract claim is DENIED.

### D.  Fraud

Compliance Services alleges that Defendants fraudulently induced Plaintiff to loan them money.  Compl. ¶¶ 25–33.  Defendants move to dismiss that claim on the grounds that Plaintiff has failed adequately to plead fraud, subject to the heightened pleading standards of Rule 9(b).  In particular, Defendant argues that Plaintiff failed to allege intent to defraud with sufficient particularity.

In order to state a claim for fraud, Plaintiff must allege that Defendants made (1) a misrepresentation (2) that was knowingly false, (3) made to induce Plaintiff to rely on it, (4) upon which Plaintiff did rely, (5) to its detriment.  Lovejoy v. AT&T Corp., 92 Cal. App. 4th 85, 93 (Cal. Ct. App.2001) (citing Lazar v. Super. Court, 12 Cal. 4th 631, 638 (Cal. 1996)).  In order to state a claim for promissory fraud, a subspecies of intentional misrepresentation, Plaintiff must allege that Defendants made: (1) a false representation of material fact; (2) made with knowledge, actual or virtual, of the true facts; (3) to a party actually or permissively ignorant of the truth;

(4) with the intention, actual or virtual, that the other party act upon it; and (5) inducing the other party to act. San Diego Mun. Credit Union v. Smith, 176 Cal. App. 3d 919, 923 (Cal. Ct. App. 1986).

Here, Plaintiff adequately states a claim for promissory fraud. Plaintiff alleges that: (1) Defendants agreed to repay the entire loan as soon as possible, but no later than August 31 2012; (2) Defendants made the agreement without any intention of performance; (3) at the time of the agreement, Plaintiff was not aware that Defendants did not intend to perform under the agreement; (4) Defendants made the agreement with the intent to induce Plaintiff to perform under the agreement; (5) Plaintiff justifiably relied on the agreement and performed; and Defendants would not have paid $398,998.40 to, or on behalf of Defendants, but for Defendants' fraudulent inducements.

In all fraud claims, plaintiffs must comply with the heightened pleading standards of Rule 9(b), and must allege each Defendant's role in the alleged fraud. See Schwartz v. KPMG LLP, 476 F.3d 756, 764–65 (9th Cir. 2007). In general, allegations sounding in fraud must contain "an account of the time, place, and specific content of the false representations as well as the Identities of the parties to the misrepresentations." Id. at 765. However, "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

In addition to pleading the elements of promissory fraud, Plaintiff has satisfied the heightened pleading standards of Rule 9(b). Plaintiff has alleged who committed the alleged fraud: Thurman, acting on behalf of Houser-CA; what the purported fraudulent conduct was: Thurman's misrepresentation of the Defendants' intent to perform under the agreement; where the alleged fraud took place: via a series of phone calls, emails, and in-person meetings between Thurman and Rode; and, when the alleged fraud occurred: the first or second week of August 2008. Compl. ¶¶ 9–14, 25–33.

Relying on Eclectic Properties E., LLC v. The Marcus & Millichap Co., No. 09-cv-00511-RMW, 2012 WL 713289 (N.D. Cal. Mar. 5, 2012), Defendants argue that Plaintiff must also do more than allege the element of scienter generally, despite Rule 9(b)'s express statement to the contrary. Eclectic Properties is inapposite. In that case, the Court held that the plaintiff's

11

1   allegation of wire fraud failed to show fraudulent intent was plausible. 2012 WL 713289, at *11–

2   12. Here, Plaintiff adequately alleged facts giving rise to the plausible inference that Defendants

3   acted with fraudulent intent. In particular, Plaintiff alleged that (1) Defendants promised to repay

4   the loan and then refused to do so, (2) that, to justify not repaying the loan, Defendants claimed

5   that the RV Park had no operating income, and (3) that, Thurman later denied the existence of any

6   agreement to repay any portion of the loan, denied that Defendants owed any money to Plaintiff,

7   and stated that Defendants would not repay any portion of the loan.

8   Plaintiff has successfully stated a claim for promissory fraud and has satisfied the

9   heightened pleading standards of Rule 9(b). Accordingly, Defendants' Motion to Dismiss

10  Plaintiff's fraud claim is DENIED.

### E. Common Count

12  Defendants move to dismiss Plaintiff's common count claim on the ground that common

13  count is not a cause of action in California. Defendants also argue Plaintiff's prayer for pre-

14  judgment interest is not appropriate under a common count claim.

15  A common count claim is a recognized cause of action regarding money had and received.

16  In re Apple In-App Purchase Litig., 855 F. Supp. 2d 1030, 1042–43 (N.D. Cal. 2012) (citing

17  McBride v. Boughton, 123 Cal. App. 4th 379, 394–95 (Cal. Ct. App. 2004)). Under California

18  law, a common count is used as an alternative claim seeking the same recovery demanded in a

19  cause of action based on the same facts. In re Apple In-App Purchase Litig., 855 F. Supp. 2d at

20  1042–43. "A cause of action for money had and received is stated if it is alleged that the

21  defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant

22  for the use of the plaintiff." Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 460–61 (Cal.

23  Ct. App. 2003) (internal citations omitted). The claim is viable "wherever one person has received

24  money which belongs to another, and which in equity and good conscience should be paid over to

25  the latter." Gutierrez v. Girardi, 194 Cal. App. 4th 925, 937 (Cal. Ct. App. 2011) (internal

26  citations omitted). The common count will be dismissed if the alternative cause of action relating

27  to the same facts is dismissed. In re Apple In-App Purchase Litig., 855 F. Supp. 2d at 1042–43.

28  Here, Plaintiff alleges that Defendants became indebted to Plaintiff in the amount of

1  $398,998.40, which Plaintiff lent to Defendants, and which is due and unpaid.  Plaintiff also
2  alleges that, in addition to the amount of the loan, Defendant owes Plaintiff six percent interest per
3  annum from August 3, 2009 through August 31, 2012.  Compl. ¶¶ 22–24.  Those allegations
4  adequately state a common count claim.  Furthermore, Plaintiff does not seek pre-judgment
5  interest — it seeks the interest payment provided for under the original loan agreement.
6  Accordingly, Defendants' Motion to dismiss Plaintiff's common count claim is DENIED.

### F.     Remedies

Plaintiff seeks multiple remedies: (1) for general, special, and compensatory damages; (2) for punitive damages as to the claim for fraud; (3) for expenses and costs of suit incurred; (4) for pre-judgement interest; and, (5) for other, further and different relief as the Court may deem just and proper.  Compl. ¶ 33.

Defendants move to strike certain remedies on the basis that they contradict each other. Defendants argue that punitive damages are generally not recoverable in contract claims, that pre-judgment interest is generally a contract remedy, and that recovering legal fees contemplates a written or statutory provision that entitles fees under the "American rule" of attorney fees. Defendant also argues that remedies flow from claims dismissed under Rule 12 should be stricken from the prayer.

Under Rule 8(d)(2) of the Federal Rules of Civil Procedure, "[a] party may state as many separate claims . . . as it has, regardless of consistency."  And, under Rule 8(a)(3),  "[a] pleading that states a claim for relief must contain . . . a demand for relief sought, which may include relief in the alternative or different types of relief."

Here, it is not contradictory to seek remedies typically related to contract claims in addition to remedies for fraud because Plaintiff has adequately stated claims for breach of contract, common count, and promissory fraud.  In regards to Plaintiff's prayer for expenses and costs of suit incurred, Plaintiff has not made any allegation that would justify such a remedy under Cal. Civ. Code § 1717.  Therefore, this portion of the Complaint will be stricken.  Accordingly, Defendants' motion to strike certain of Plaintiff's remedies is DENIED IN PART and GRANTED IN PART.

## IV. CONCLUSION

For the foregoing reasons, Defendant Houser-NV's motion to dismiss is DENIED. Defendant Thurman's motion to dismiss for ineffective service is GRANTED. Plaintiff is hereby ORDERED to perfect service as to Defendant Thurman within 90 days of the date of this Order. Failure to serve Thurman within 90 days may result in dismissal of Thurman from this action for failure to prosecute.

**IT IS SO ORDERED**.

Dated:  August 9, 2013



JON S. TIGAR
United States District Judge

14